UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES M. CORMACK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01348-JRS-DML |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Petition for a Writ of Habeas Corpus and
Denying Motion for Interlocutory Injunction and Order for Immediate Release**

Petitioner Charles Cormack was convicted in 2002 in Clark County, Indiana, on charges of child molestation and sexual misconduct with a minor. Mr. Cormack served a term of imprisonment and was released on parole. He violated the terms of his parole and was returned to prison, where he remains. Mr. Cormack now seeks a writ of habeas corpus.

For the reasons that follow, the petition must be denied, and no certificate of appealability shall issue. Further, Mr. Cormack's motion for interlocutory injunction and order for immediate release based on the COVID-19 pandemic is also denied.

### I.     Factual and Procedural Background

On July 29, 2002, Mr. Cormack pleaded guilty to three crimes that occurred between February 1, 2000, and March 11, 2000: child molestation, as a Class C felony, and two counts of sexual misconduct with a minor, as a Class B felony, pursuant to a written plea agreement. Dkt. 10-1 at 2; dkt. 42-1. The trial court sentenced Mr. Cormack to thirty-six years, with eight of those years suspended to probation. *Id.* At the time of Mr. Cormack's offenses, Indiana law required all people convicted of "child molesting" or "sexual misconduct with a minor as a Class B felony" to serve parole for no more than ten years after completing their fixed term. I.C. § 35-

50-6-1(d) (1998). Mr. Cormack's plea agreement made no mention of his parole requirement. Dkt. 42-1.

Mr. Cormack was released to parole on August 1, 2013. Dkt. 10-4. He was subsequently arrested for a parole violation due to possession of an electronic device and attempted third-party contact with the victim. Dkt. 1 at 1. On March 10, 2016, the Indiana Parole Board revoked Mr. Cormack's parole and remanded him to prison to serve the remainder of his sentence. Dkt. 10-6 at 87.

On February 23, 2017, Mr. Cormack filed a petition for writ of habeas corpus in Henry County Circuit Court, which was dismissed on April 26, 2017, for failure to state a claim. Dkt. 10-5 at 1–12, 38. Mr. Cormack appealed, and the Court of Appeals affirmed the dismissal on December 21, 2017, in an unpublished decision. *Cormack v. Butts*, 95 N.E.3d 215, 2017 WL 6521707 (Ind. Ct. App. Dec. 21, 2017). The court held that the requirement that Mr. Cormack participate in Indiana's Sex Offender Management and Monitoring program ("SOMM program") on parole did not violate the constitutional prohibitions of *ex post facto* laws under the state or federal constitutions, and the lack of advisement that he would have to serve a term of parole did not warrant habeas relief. *Id.* at *2–3. The Indiana Supreme Court denied transfer. Dkt. 10-6 at 151.

Mr. Cormack filed the instant petition for writ of habeas corpus on May 2, 2018. Dkt. 1. He asserted three claims: 1) that the SOMM program, parole restrictions, and Indiana statutes related to residence restrictions for sex offenders, sex offender program registration fees, and sex offender change of address fees violated the constitutional prohibitions against *ex post facto* laws; 2) that his Fourteenth Amendment due process rights were violated when he was not advised of his mandatory parole when he entered into his guilty plea; and 3) that his right to equal protection was violated because parole was not addressed at sentencing although probation was.

The respondent's return argued in part that Mr. Cormack had failed to exhaust his claims with respect to the Indiana statutes. Mr. Cormack sought to withdraw those claims so he could exhaust them. Dkt. 20.

On July 27, 2018, Mr. Cormack filed an amended petition for *ex post facto* relief in Clark County Circuit Court, arguing that the Indiana statutes violated the prohibitions against *ex post facto* laws. Dkt. 30-1. The State moved for summary disposition arguing that Mr. Cormack's petition was barred as *res judicata*. Dkt. 30-2. The trial court dismissed the case, dkt. 30-3, and Mr. Cormack filed an appeal, dkts. 30-5, 30-6. The State filed a motion to dismiss arguing (1) that the trial court correctly determined Mr. Cormack's claims were barred by *res judicata* and (2) any claims about those statutes were not ripe because they did not form the basis of his parole revocation. Dkt. 30-7 at 4–5. The Indiana Court of Appeals dismissed the appeal with prejudice (without explanation of its reasoning), dkt. 30-9, and the Indiana Supreme Court denied transfer on May 9, 2019, dkt. 30-14.

On June 17, 2019, Mr. Cormack filed another petition for habeas corpus in this Court under cause number 1:19-cv-2445-JRS-MJD, arguing 1) that the Indiana statutes violated the e*x post facto* clause and 2) that his right to due process was violated because he did not receive a copy of the State's brief in his last appeal. The Court dismissed the case as duplicative and ordered that his petition be filed under this cause number as an amended petition.

The Court will address Mr. Cormack's claims in both his petition, dkt. 1, and his amended petition, dkt. 22.

## II.    Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a).

3

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply

reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302.

### III.   Discussion

Mr. Cormack raises the following claims in his habeas petition: 1) that the SOMM program, parole restrictions, and Indiana statutes related to tolling of the registration period (I.C. § 11-8-8-19(a)), residence restrictions for sex offenders (I.C. § 35-42-4-11), sex offender program registration fees (I.C. § 36-2-13-5.6(a)(1)(A)), and sex offender change of address fees (I.C. § 36-2-13-5.6(a)(1)(B)) violated the constitutional prohibitions against *ex post facto* laws; 2) that his Fourteenth Amendment due process rights were violated when he was not advised of his mandatory parole during his guilty plea proceedings; 3) that his right to equal protection was violated when the trial court addressed probation but not parole at his guilty plea and sentencing hearing; and 4) that his due process rights were violated when he failed to receive a copy of the State's brief in his second appeal.

#### a.   Ex Post Facto Violation

The United States Constitution "prohibits both federal and state governments from enacting any '*ex post facto* Law.'" *Peugh v. United States*, 133 S. Ct. 2072, 2081 (2013) (citing Art. I, § 9,

cl. 3; Art. I, § 10). Among other things, this clause prohibits laws "that chang[e] the punishment, and inflic[t] a greater punishment, than the law annexed to the crime, when committed." *Id.* (citation and quotation marks omitted). "[T]he constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). "The [Supreme] Court has emphasized the restriction of the Clause to penal statutes, and thus a civil regulatory regime will implicate *ex post facto* concerns only if it can be fairly characterized as punishment." *United States v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011) (citations and quotation marks omitted). Simply put, "[t]o violate the Ex Post Facto Clause . . . a law must be both retrospective *and* penal." *Id.*

In Mr. Cormack's first petition for a writ of habeas corpus in state court, he alleged that the imposition of the SOMM program and the violation of his parole due to stipulations under the SOMM program[1] constituted *ex post facto* violations. Dkt. 10-5 at 1. The Indiana Court of Appeals addressed this claim on the merits, reasoning as follows:

> Both the federal and state constitutions prohibit ex post facto laws. U.S. CONST. art. I, § 10; IND. CONST. art. I, § 24. An ex post facto law imposes a punishment for an act that was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Ramon v. State*, 888 N.E.2d 244 (Ind. Ct. App. 2008). The focus of the ex post facto inquiry is not on whether the change causes a disadvantage; rather, we must determine whether the change increases the penalty by which a crime is punishable or alters the definition of criminal conduct. *Id.* Analysis of alleged violations is the same under both constitutional provisions. *Upton v. State*, 904 N.E.2d 700 (Ind. Ct. App. 2009), *trans. denied*.
>
> The practice of releasing prisoners on parole has become an integral part of our penological system—not as an ad hoc exercise of clemency but as an established variation on imprisonment. *Harris v. State*, 836 N.E.2d 267 (Ind. Ct. App. 2005), *trans. denied*. The primary purpose of parole is to help offenders reintegrate

---

[1] To be clear, Mr. Cormack's petition does not challenge any requirement that he participate in SOMM while he is incarcerated at New Castle Correction facility. *See*, *e.g.*, *Lacy v. Butts*, 922 F.3d 371, 379 (7th Cir. 2019) (finding § 2254 petition a proper vehicle to challenge loss of credit time while incarcerated due to refusal to participate in SOMM program in prison).

into society as constructive individuals without being confined for the full term of their sentence. *Id.* To accomplish this goal, offenders placed on parole are subjected to specific conditions that restrict their activities substantially beyond ordinary restrictions imposed by law on individual citizens. *Id.*

The parole board has the power to determine whether prisoners should be released on parole and, if so, under what conditions. Ind. Code §§ 11–13–3–3, –4 (2012); *Harris*, 836 N.E.2d 267. A prisoner is released on parole only upon his agreement to these conditions, and the parole agreement is a contract between the prisoner and the State by which the parolee is bound. *Harris*, 836 N.E.2d 267. The board may also impose additional conditions beyond the standard conditions as long as they are reasonably related to the parolee's successful reintegration into the community and not unduly restrictive of a fundamental right. Ind. Code § 11–13–3–4(b).

Here, the additional parole condition for Cormack is his participation in the SOMM program. This very question was addressed in *Patrick v. Butts*, 12 N.E.3d 270 (Ind. Ct. App. 2014). The *Patrick* panel explained:

> The Parole Board is allowed to impose conditions that are "reasonably related to the parolee's successful reintegration into the community," Ind. Code § 11–13–3–4(b), and that subsection was in place when Patrick was convicted [in 1991]. Our Supreme Court has found that the SOMM program "is a valuable tool aimed at the legitimate purpose of rehabilitating sex offenders before they are fully released from State control." *Bleeke v. Lemmon*, 6 N.E.3d 907, 940 (Ind. 2014). As the Parole Board's authority to impose conditions on parole is not limited by the date on which the program was created, but rather is limited by the program's ability to help reintegrate the parolee into society, the order that Patrick participate in SOMM does not violate the ex post facto clause.

*Id.* at 271–72. We find this reasoning to be true in this case as well.

*Cormack*, 2017 WL 6521707 at *1–2 (Ind. Ct. App. 2017).

This was not an unreasonable application of federal law. When Mr. Cormack committed his crime, he was subject to being placed on parole for no more than ten years. I.C. § 35-50-6-1(d) (1998). Additionally, the Indiana Parole Board had broad statutory authority to impose conditions of parole that "are reasonably related to the parolee's successful reintegration into the community and not unduly restrictive of a fundamental right." I.C. § 11-13-3-4(b) (1999). Neither the SOMM program, nor the stipulations Mr. Cormack violated, violate the Ex Post Facto Clause because they

did not extend the length of his punishment or change the terms of it; they merely affected the procedures by which the parole board monitors parolees convicted of sex crimes. *See Portley v. Grossman*, 444 U.S. 1311, 1312 (1980) ("The terms of the sentence originally imposed have in no way been altered. … The [parole] guidelines, therefore, neither deprive applicant of any pre-existing right nor enhance the punishment imposed. The change in guidelines assisting the Commission in the exercise of its discretion is in the nature of a procedural change found permissible in *Dobbert* [*v. Florida*, 432 U.S. 282, 293 (1977)].").

Mr. Cormack's reliance on *Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967), *aff'd mem.*, 390 U.S. 712 (1968), dkt. 16 at 3–4, is unavailing. In *Greenfield*, the defendant, who was incarcerated after having his parole revoked, challenged a statute that prohibited any state parole violator from receiving good-conduct credits during his six first months in custody following the revocation. 277 F. Supp at 644–45. When he had committed his crime, all prisoners, including parole violators, could accumulate good-conduct credits from the beginning of their incarceration. *Id.* Because the statute prevented him from being released as early as he might have been had he been allowed to accrue good-time credits under the statute in effect when he committed his crime, the statute operated retrospectively and to his detriment, and, accordingly, violated the Ex Post Facto Clause. *Id.* at 645. Here, Mr. Cormack's parole stipulations, including his participation in SOMM, did not extend the length of his parole or his original sentence. The Indiana Court of Appeals' decision was not an unreasonable application of federal law, and habeas relief is not warranted.

Because Mr. Cormack acknowledged that he had not exhausted his *ex post facto* claims as it related to certain Indiana statutes, he sought to withdraw those claims to pursue them in state court. He then filed an amended petition for *ex post facto* relief under Indiana cause number

33C02-1702-MI-15 challenging the following statutes: I.C. § 11-8-8-19(a), which tolls the registration period; I.C. § 35-42-4-11, which places residence restrictions on sex offenders; I.C. § 36-2-13-5.6(a)(1)(A), which imposes registration fees for the sex offender program; and I.C. § 36-2-13-5.6(a)(1)(B), which imposes fees when sex offenders change their address. The trial court dismissed his petition as being barred by *res judicata*. Mr. Cormack appealed the dismissal of the petition. His appeal was dismissed, and the Indiana Supreme Court did not grant transfer.

The respondent argues that Mr. Cormack failed to exhaust his remedies because, although he tried to challenge these statutes in state court, he used the wrong procedural vehicle. The respondent contends that instead of filing a second petition for *ex post facto* relief, Mr. Cormack should have sought permission to file a successive petition for post-conviction relief under Indiana's post-conviction rules. Dkt. 30 at 7. The respondent speculates that had he done so, the Indiana court may have reached the merits of Mr. Cormack's arguments rather than deny them on *res judicata* grounds. The Court finds this argument unpersuasive, because the Seventh Circuit has "repeatedly held that '*res judicata* is not a bar to consideration of claims in a federal habeas action'" but rather is a "merit-based determination." *Davis v. Lambert*, 388 F.3d 1052, 1058 (7th Cir. 2004) (quoting *Moore v. Bryant*, 295 F.3d 776 n.1 (7th Cir. 2002) and citing *Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997) and *Page v. Frank*, 343 F.3d 901 (7th Cir. 2003)).

Even if the respondent is correct that Mr. Cormack's claims are unexhausted or procedurally defaulted, the Court will bypass the procedural issue because Mr. Cormack's challenges to these statutes are not ripe. *See Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010); (bypassing a difficult innocence question to address claim on the merits). "Ripeness doctrine is based on the Constitution's case-or-controversy requirements as well as discretionary prudential considerations." *Wisc. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148

(7th Cir. 2011). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998). Mr. Cormack's parole was not revoked due to a violation of any of these statutes, and he admits that any harm is a potential *future* harm. *See* dkt. 22 at 4 (Cormack "is currently under a law which *could end up* getting him violated for a failure to register due to a failure to pay the registration fee." (emphasis added)). Relief under § 2254 is available only to petitioners who are currently in custody for violations of the federal constitution. These allegations rest upon the Indiana Parole Board revoking Mr. Cormack's parole after he is released from prison. This will not happen until 2021, if at all. As such, challenges to these statutes are not ripe and must be dismissed.

### b. Due Process and Equal Protection Rights—Parole Advisements during Guilty Plea Proceedings

Mr. Cormack argues that his due process rights were violated because he was not advised of his mandatory sex offender parole term by his attorney, the prosecutor, or the trial court. Dkt. 1 at 7. With respect to this claim, the Indiana Court of Appeals concluded that he was not entitled to habeas relief because courts are not required to advise defendants of the parole consequences of their pleas since the "'parole impact of a plea is neither a constitutional right nor an advisement required by statute.'" *Cormack*, 2017 WL 6521707 at*2 (quoting *Fulmer v. State*, 519 N.E.2d 1236, 1238 (Ind. 1988)). Mr. Cormack also argues that his right to equal protection was violated because defendants are advised of their probation obligations but not their parole obligations at their guilty plea hearings.

Although framed as a due process and equal protection challenge, Mr. McCormick is actually challenging whether his plea agreement was entered into knowingly, intelligently, and voluntarily due to the lack of advisements about parole. A court may not accept a "defendant's guilty plea 'without an affirmative showing that it was intelligent and voluntary.'" *Dansberry v.*

10

*Pfister*, 801 F.3d 863, 864 (7th Cir. 2015) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). Mr. Cormack alleges that had he known that he would be required to be placed on both probation and parole, "it would have altered what the … petitioner agreed to." Dkt. 1 at 7.

The parties' initial filings did not contain the plea agreement or guilty plea and sentencing hearing transcript, making any review of these claims impossible. The Court directed the respondent to supplement the record with these documents.[2] Dkt. 39. The Court also observed that these claims appeared to be barred by the one-year statute of limitations imposed by AEDPA. *Id.* A court may raise the timeliness of a habeas petition *sua sponte*, but only if it provides the parties notice and an opportunity to present their positions. *Day v. McDonough*, 547 U.S. 198, 210 (2006). Both parties responded, dkts. 40 and 42, and the respondent provided the requested documents, dkts. 42-1 and 42-2.

Mr. Cormack's plea agreement made no mention of his parole obligations, dkt. 42-1, nor did the trial court advise him that he would be placed on parole upon his release, dkt. 42-2. However, Mr. Cormack's claims about the deficient advisements are barred by the statute of limitations.

In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law," Congress revised several statutes governing federal habeas relief as part of AEDPA. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). 28 U.S.C. § 2244(d)(1) states that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State." Relevant here, the limitation period would start from "the date on which the factual predicate of the claim or claims

---

[2] When the respondent filed Mr. Cormack's plea agreement documents and hearing transcript, he did not redact Mr. Cormack's social security number or the name of the minor victim. *See* Fed. R. Civ. P. 5.2(a). While the Court understands that the respondent was trying to provide these documents as soon as they became available, respondent must take care to avoid the unnecessary disclosure of sensitive information.

11

presented could have been discovered through due diligence." 28 U.S.C. § 2244(d)(1)(D). "The one-year clock is stopped, however, during the time the petitioner's 'properly filed' application for state postconviction relief 'is pending.'" *Day v. McDonough*, 547 U.S. 198, 201 (2006) (quoting 28 U.S.C. § 2244(d)(2)).

Mr. Cormack signed his parole stipulations for sex offenders agreement and was released from prison to parole on August 1, 2013. Dkt. 10-4. Accordingly, his release to parole served as the "factual predicate" of his claim, triggering the one-year statute of limitations. Mr. Cormack concedes this point. Dkt. 40 at 3 ("The petitioner was unaware of his term of parole that was to accompany his term of probation until he was about to be released in 2013."). Mr. Cormack did not file his first state petition for collateral review until February 23, 2017, more than three years after the parole requirements were imposed upon him. Dkt. 10-5. Accordingly, any claim attacking the voluntariness of his plea (rather than the revocation of parole) is barred by the statute of limitations.

Mr. Cormack suggests he was unaware of the one-year limitation period imposed by AEDPA. Dkt. 40 at 3–4. The Court construes this as an argument for equitable tolling. "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). The diligence element "covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). A lack of awareness of the limitations period is insufficient to meet the second element. *See Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014) ("[I]t is established that prisoners' shortcomings of knowledge about the AEDPA or the law of criminal procedure in

general do not support tolling."); *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) ("[S]tanding alone, the lack of legal expertise is not a basis for invoking equitable tolling."). Mr. Cormack is thus not entitled to equitable tolling.

### c. Due Process Rights—Receipt of Appellee's Brief

Mr. Cormack's final claim is that his due process rights were violated because the deputy attorney general did not send him a copy of the appellee's brief in the appeal of the dismissal of his second habeas petition, which in turn deprived him of the opportunity to file a reply brief. Recall, Mr. Cormack's second habeas petition raised *ex post facto* challenges to Indiana statutes regarding residency, fees, and tolling of the registration period—none of which formed the basis of his parole revocation.

The respondent argues that he has not exhausted this claim in state court and still has the opportunity to do so. However, Mr. Cormack petitioned for rehearing alerting the Indiana Court of Appeals to the issue, dkt. 30-11, and he raised the issue in his petition to transfer to the Indiana Supreme Court, dkt. 30-13. Regardless, the Court will bypass the procedural question because this claim is meritless. *See Brown*, 599 F.3d at 610.

As a factual matter, the Court notes that the State did not file an appellee's brief in Mr. Cormack's appeal; rather, it filed a motion to dismiss. Dkt. 30-7. Assuming he did not receive a copy of the motion to dismiss, Mr. Cormack's claim that he was denied due process because he was unable to respond to the State's filing is without merit. Mr. Cormack does not cite to any case law saying that he has a due process right to file a reply brief, or in this case, a response to the State's motion to dismiss. However, even assuming such a right existed, Mr. Cormack must show that the violation had "a substantial and injurious effect on the outcome." *Rodriguez v. Chandler*, 382 F.3d 670, 674 (7th Cir. 2004) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). As the

Court previously determined, Mr. Cormack cannot obtain habeas relief on his challenges to these statutes because these challenges are not ripe. Therefore, he cannot show any harm or injurious effect from not being able to file a response to the motion to dismiss.

## IV.     Motion for Interlocutory Injunction and Order for Immediate Release

Mr. Cormack filed a motion for interlocutory injunction, dkt. [37], seeking his release while his petition for habeas corpus remained pending. Because the Court has denied his petition, the motion is **denied as moot**. To the extent that Mr. Cormack independently sought release based on his advanced age in light of the COVID-19 pandemic, the Court notes he must first exhaust state-court remedies. *See Money v. Pritzker*, 2020 WL 1820660, (N.D. Ill. Apr. 10, 2020) (holding petitioners seeking habeas relief due to COVID-19 must exhaust state remedies or show they are unavailable).

## V.     Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." The Indiana Court of Appeals reasonably concluded that Mr. Cormack's parole terms did not violate the prohibition against *ex post facto* because the terms did not extend or change his punishment but were for the purpose of assisting with his rehabilitation. Mr. Cormack's *ex post facto* challenges to Indiana statutes are unripe because none formed the basis of his parole revocation. Mr. Cormack's claims related to the voluntariness of his plea due to a lack of advisements about parole are barred by the statute of limitations. And Mr. Cormack's due process claim based on his lack of opportunity to file a response to the State's motion to dismiss is meritless because the underlying claims in his second state habeas petition are unripe. No reasonable jurist could disagree with the outcome of these claims, and none of the claims deserve encouragement to proceed further. Therefore, a certificate of appealability is **denied**.

## VI.  Conclusion

For the foregoing reasons, Mr. Cormack's petition for a writ of habeas corpus is **denied** and a certificate of appealability shall not issue. Further, Mr. Cormack's motion for interlocutory injunction and immediate release, dkt. [37], is **denied**. Final judgment consistent with this Order shall issue.

The **clerk is directed** to seal docket 42-1 and docket 42-2.

**IT IS SO ORDERED.**

Date:   9/21/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

15

Distribution:

CHARLES M. CORMACK
125006
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Jill Esenwein
INDIANA ATTORNEY GENERAL
jill.esenwein@atg.in.gov

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov